Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Todd M. Swensen
Assistant United States Attorney
Timothy J. Ohms
Assistant United States Attorney
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUN 11 2024

SEAN F. MCAVOY, CLERK
_____, DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TAHSHEENA STACY SAM,

    Defendant.

Case No.: 1:22-CR-02076-MKD-2

PLEA AGREEMENT

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Todd M. Swensen and Timothy J. Ohms, Assistant United States Attorneys for the Eastern District of Washington, and Defendant Tahsheena Stacy Sam ("Defendant"), both individually and by and through Defendant's counsel, Scott W. Johnson and Mitchell K. Crook, agree to the following Plea Agreement:

1.     <u>Guilty Plea and Maximum Statutory Penalties</u>:

Defendant agrees to waive indictment and enter a plea of guilty to an Information charging Defendant with Second Degree Murder in Indian Country, in violation of 18 U.S.C. § 1111, 1153.

//

PLEA AGREEMENT - 1

Defendant understands that Second Degree Murder in Indian Country, in violation of 18 U.S.C. §§ 1111, 1153, is a Class A felony offense that carries the following potential penalties:

    a.    A term of imprisonment of up to life;

    b.    A term of supervised release of not more than 5 years;

    c.    A fine of up to $250,000;

    d.    A $100 special penalty assessment.

2. <u>Supervised Release</u>:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

    a.    Five (5) years in prison if the offense that resulted in the term of Supervised Release is a class A felony;

    b.    Three (3) years in prison if the offense that resulted in the term of Supervised Release is a class B felony; and/or

    c.    Two (2) years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>The Court is Not a Party to this Plea Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

PLEA AGREEMENT - 2

Defendant understands the following:

    a.    Sentencing is a matter solely within the discretion of the Court;

    b.    The Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c.    The Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d.    The Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.    The Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart or vary upward or downward under certain circumstances; and

    f.    The Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4.    <u>Potential Immigration Consequences of Guilty Plea:</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    Pleading guilty in this case may have immigration consequences;

    b.    A broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    Removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    No one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

PLEA AGREEMENT - 3

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a. The right to a jury trial;
    b. The right to see, hear and question the witnesses;
    c. The right to remain silent at trial;
    d. The right to testify at trial; and
    e. The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions. Defendant agrees to waive any potential statute of limitations issues in this case, and Defendant further agrees that this Court shall fully resolve **Defendant's** case due to **Defendant's** waiver of any statute of limitations issues.

6. <u>Elements of the Offense</u>:

The parties agree that in order to convict Defendant of Second-Degree Murder in Indian Country, in violation of 18 U.S.C. §§ 1111, 1153, the United States would have to prove the following beyond a reasonable doubt:

PLEA AGREEMENT - 4

*First*, On or about December 26, 2017, in the Eastern District of Washington, Defendant unlawfully killed a person;

*Second*, Defendant killed with malice aforethought;

*Third*, the killing took place within Indian Country jurisdiction of the United States; and

*Fourth*, Defendant is an Indian.

7. Factual Basis and Statement of Facts:

The parties stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The parties agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

On December 28, 2017, a relative of 23-year-old D.L. reported to the Yakama Nation Police that D.L. had not been seen since the evening of December 25, 2017. Witnesses from D.L.'s residence reported that D.L. left in a vehicle with friends on the evening of December 25, 2017, and did not return. On December 29, 2017, a person driving near Harrah Road and Marion Drain Road on the Yakama Nation Indian Reservation, in Indian Country, reported seeing a body face-down next to the canal on the opposite bank. Police responded to the location and found the body of D.L., who was deceased. She had blood on her face, no pulse, and was cold to the touch. Police observed what appeared to be drag marks in the snow at the top of the embankment and two sets of footprints.

An autopsy conducted on January 2, ~~2028~~ 2018 [initials], revealed a compression fracture at the base of D.L.'s skull, a small laceration to her left eyebrow, and three large

PLEA AGREEMENT - 5

lacerations on the back of her head. D.L.'s cause of death was determined to be cerebral trauma due to her skull fracture.

An FBI special agent assisting in the investigation located several witnesses who were with D.L., or who saw her, on the evening of December 25-26, 2017. Witnesses reported that D.L. left her residence in the company of Calvin Wahsise, Waylon Napyer, Shelain Slakish, and Defendant Tahsheena Stacy Sam. The group purchased alcohol to share and drove around the Yakama Nation Indian Reservation in Napyer's truck. During the evening, Wahsise became separated from the group and was not present during D.L.'s murder.

Records maintained by the Yakama Nation show that Defendant is an enrolled member of the Yakama Indian Nation with an enrollment date of May 30, 1991. The Defendant has some quantum of Indian blood traceable to a member of a federally recognized tribe. The Defendant was a member of a federally recognized tribe at the time of the offense.

On February 17, 2018, a witness provided law enforcement with a series of text messages sent on February 16 and 17, 2018, between the witness and Shelain Slakish that referenced D.L.'s murder. Slakish asserted that Napyer knew what happened to D.L., then explained in part that "[D.L.] DIDN'T FALL WE SMASHED HER IN THE HEAD WIT A TOOL THREW HER IN THE CANAL."

On April 3, 2018, the FBI obtained search warrants for the Facebook accounts maintained by Slakish and others suspected of having knowledge of D.L.'s murder. In a series of messages exchanged between Slakish and Defendant on January 6, 2018, Defendant complained that Slakish did not tell her that federal investigators were looking for them. Defendant later told Slakish that she was going to turn herself in and take the blame. Slakish discouraged Defendant from doing that and told Defendant that they were all going to go to Canada.

//

PLEA AGREEMENT - 6

Through the spring, summer, and fall of 2018, the FBI conducted interviews of Napyer, Wahsise, Defendant, and others.

Napyer initially denied knowing D.L. After being confronted with Facebook messages contradicting his statement, Napyer claimed that his phone had been stolen and his account hacked. When confronted with additional messages, he admitted that he was with D.L. on the night she disappeared. He claimed they were driving around in his pickup truck with Slakish, Wahsise, and Defendant. He claimed he was lying down on the backseat while Defendant drove. He claimed D.L. was in the front seat with Wahsise. He claimed that he and Slakish were dating, as were Wahsise and D.L. He claimed they went to a bar to get something to eat. He claimed that he got into an argument with Slakish and had Defendant drop him off at the residence of a third party. He claimed the rest of the group left in his truck. He denied any knowledge of what happened to D.L.

Wahsise stated that on December 25, 2017, he was at a family gathering in White Swan when Napyer stopped by and wanted to go drinking with him. Wahsise contacted D.L. to see if she wanted to join them. Before picking her up, Wahsise and Napyer picked up Slakish and Defendant. When they picked up D.L. at D.L.'s residence, Defendant was driving Napyer's Ford pickup truck. Napyer and Slakish were in the back seat; Wahsise and D.L. were in the front seat. The group drove to the store to buy "match bottles" of Southern Comfort, Crown Royal, and Grey Goose. At 1:00 a.m., they parked outside of White Swan. Wahsise exited the truck and continued drinking. He claimed that Napyer, Slakish, and Defendant "ditched" him at that time, saying they were going to drop off D.L. Wahsise claimed he eventually blacked out. When he came to, he found himself walking down Fort Road to a relative's residence. When Wahsise learned that D.L. had been killed, he contacted Napyer and demanded to know what Napyer had done to her. Napyer told Wahsise that Defendant was the driver and that Slakish disposed of D.L.'s body. He said that when they were buying the alcohol, he saw

PLEA AGREEMENT - 7

that D.L. had some money. Napyer wanted the money. According to Napyer, after D.L. was killed, Defendant became angry at Napyer. Defendant then took the money that they had taken from D.L. and threw it at Napyer.

In November 2018, Defendant was interviewed. She admitted that she was in Napyer's vehicle on the night that D.L. was murdered but denied being there "the whole time." She said that she was friends with Slakish but had just met D.L. She declined to provide further information at that time.

In January of 2019, the FBI conducted an interview of Slakish. Slakish agreed that Wahsise became separated from the group before D.L.'s murder but denied that they had dropped off Napyer, who Slakish said remained present throughout D.L.'s murder. Slakish said that Defendant assaulted D.L. in order to take money from D.L. This occurred outside of the vehicle next to the canal near Harrah Road and Marion Drain Road. After assaulting D.L., they left D.L. on the side of the road. After leaving D.L., Defendant became concerned that D.L. would tell her brothers what happened. At Defendant's urging, they returned to the scene and found D.L., who was trying to hide. Slakish said that Defendant assaulted D.L. a second time. While D.L. was on the ground, Defendant beat her with a "monkey wrench." They then left the area.

In the summer of 2019, the FBI located a witness who reported that during the summer of 2018, Defendant made a series of statements to her in which she described killing a girl with a tool. The witness reported that she became friends with Defendant during the year following D.L.'s murder. On several occasions when she and Defendant were drinking together, Defendant would start crying and express remorse about her involvement in the murder. Defendant's statements about the murder increased in detail over time. Defendant told the witness that she killed a girl by hitting her on the head with a large tool and left her body in a ditch. Defendant ultimately identified the girl by D.L.'s first name. Defendant claimed

PLEA AGREEMENT - 8

that the girl would not have been killed if she had not threatened to tell her brothers about Defendant taking her money.

Since her indictment and arrest, Defendant has made additional admissions concerning D.L.'s death. Defendant admitted that she was driving Napyer's truck on the evening of December 25-26, 2017, in which Napyer, Slakish, Wahsise, and D.L. were all passengers. After Wahsise became separated from the group, money was forcibly taken from D.L., and D.L. was left on the side of the road near Harrah Road and Marion Drain Road on the Yakama Nation Indian Reservation. After driving away, members of the group discussed the need to return to prevent D.L. from reporting the crime. Defendant, Napyer, and Slakish returned to the location where they had left D.L. and used a flashlight to follow her tracks in the snow until they found her. Defendant exited the vehicle and told Napyer to give her something with which Defendant could hit D.L. Napyer produced a large monkey wrench from the pickup truck and threw it to Defendant. Defendant picked up the monkey wrench, approached D.L., and struck her several times in the head. D.L. slumped to the ground. Defendant drove away with Napyer and Slakish, leaving D.L.'s body where it was discovered a few days later.

Defendant stipulates that on or about December 26, 2017, in Indian Country located within the Eastern District of Washington, she intentionally and unlawfully killed D.L. with malice aforethought by striking D.L in the head with a large monkey wrench.

8. <u>The United States' Agreements</u>:

    a.    *Dismissals*:

At the time of sentencing, the United States agrees to move to dismiss the Superseding Indictment filed on June 13, 2023, as to Defendant, which charges Defendant with First Degree Murder in Indian Country, in violation of 18 U.S.C. § 1111, 1153 (Count 2) and Felony Murder in Indian Country, in violation of 18 U.S.C. §§ 1111, 1153 (Count 3).

PLEA AGREEMENT - 9

b.  *Additional Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9.  United States Sentencing Guidelines Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.  *Base Offense Level*:

The United States and Defendant stipulate and agree that the Base Offense Level for Second Degree Murder in Indian Country, in violation of 18 U.S.C. §§ 1111, 1153, is 38. *See* USSG §2A1.2.

b.  *Special Offense Characteristics*:

The United States and Defendant make no agreement concerning any special offense characteristics that may apply to Defendant's base offense level and reserve the right to argue for or against the application of any special offense characteristics applicable to Defendant's offense conduct.

c.  *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

    i.  Accepts this Plea Agreement;

    ii. Enters a guilty plea at the next pretrial hearing;

PLEA AGREEMENT - 10

        iii.      Demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

        iv.      Provides complete and accurate information during the sentencing process; and

        v.      Does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    d.    *No Other Agreements*:

The parties have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct.

    e.    *Criminal History*:

The parties have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

10.    <u>Incarceration</u>:

The United States may recommend any lawful sentence. Defendant agrees to recommend a sentence of not less than 240 months in custody.

PLEA AGREEMENT - 11

11. *Supervised Release*:

The United States and Defendant each agree to recommend 5 years of supervised release. Defendant agrees that the Court's decision regarding the term and conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

    b.    Defendant shall participate in and complete such drug testing and drug treatment programs as the Probation Officer directs, but not to exceed six non-treatment drug tests per month during the imposed term of supervised release.

    c.    Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

//
//
//

PLEA AGREEMENT - 12

12. <u>Criminal Fine</u>:

The parties have no agreement on whether a fine should be imposed.

13. <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

14. <u>Restitution</u>:

The United States and the Defendant hereby stipulate and agree that, pursuant to 18 U.S.C. §§ 3663A and 3664, the Court should order the Defendant to pay restitution in an amount to be determined at or before sentencing to D.L's estate, representative of D.L's estate, family member(s), or any other person appointed as suitable by the court, who may assume D.L's rights to restitution pursuant to 18 U.S.C. § 3663A(a)(2).

The United States and Defendant agree that if the Court imposes restitution, the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Defendant agrees to pay not less than 10% of Defendant's net monthly income towards any restitution obligation.

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m).

//

//

PLEA AGREEMENT - 13

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

Defendant agrees to notify the Court and the United States of any material change in Defendant's economic circumstances (e.g., inheritances, monetary gifts, changed employment, or income increases) that might affect Defendant's ability to pay restitution. 18 U.S.C. § 3664(k). Defendant also agrees to notify the United States of any address change within 30 days of that change. 18 U.S.C. § 3612(b)(1)(F). These obligations cease when Defendant's fine and restitution obligations are paid in full.

Defendant acknowledges that the Court's decision regarding restitution is final and non-appealable; that is, even if Defendant is unhappy with the amount of restitution ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or restitution order.

15. <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

//
//

PLEA AGREEMENT - 14

16. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The parties agree the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives the right to appeal her conviction and the sentence imposed by the Court.

Defendant expressly waives Defendant's right to appeal any fine or term of supervised release.

Defendant expressly waives Defendant's right to appeal any restitution order so long as restitution does not exceed $10,000.00.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

PLEA AGREEMENT - 15

a. This Plea Agreement shall become null and void;

b. The United States may prosecute Defendant on all available charges;

c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d. The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19. <u>Integration Clause</u>:

The parties acknowledge that this document constitutes the entire Plea Agreement between the parties, and no other promises, agreements, or conditions exist between the parties concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

PLEA AGREEMENT - 16

The parties agree that this Agreement cannot be modified except in a writing that is signed by the parties.

Approvals and Signatures:

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____     6/11/24
Todd M. Swensen                 Date
Assistant United States Attorney

_____     6/15/24
Timothy J. Ohms                 Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____     6-11-24
Tahsheena Stacy Sam             Date
Defendant

PLEA AGREEMENT - 17

We have read the Plea Agreement and have discussed the contents of the agreement with our client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  We concur in our client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's guilty plea.

_____     6 - 11 - 24
Scott W. Johnson                                    Date
Attorney for Defendant

_____     6-11-24
Mitchell K. Crook                                   Date
Attorney for Defendant

PLEA AGREEMENT - 18