Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Todd M. Swensen
Assistant United States Attorney
Timothy J. Ohms
Assistant United States Attorney
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUL 1 6 2024

SEAN F. MCAVOY, CLERK
_____, DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WAYLON JAKE NAPYER,<br><br>Defendant. | Case No.: 1:22-CR-02076-MKD-1<br><br>PLEA AGREEMENT |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Todd M. Swensen and Timothy J. Ohms, Assistant United States Attorneys for the Eastern District of Washington, and Defendant Waylon Jake Napyer ("Defendant"), both individually and by and through Defendant's counsel, Nicholas Marchi, agree to the following Plea Agreement.

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

Defendant agrees to enter a plea of guilty to Count 1 of the Superseding Indictment filed on July 31, 2023, which charges Defendant with Misprision of a Felony, in violation of 18 U.S.C. § 4.

//

PLEA AGREEMENT - 1

1  Defendant understands that Misprision of a Felony, in violation of 18 U.S.C.
2  § 4, is a Class E felony offense that carries the following potential penalties:
3      a.    A term of imprisonment of not more than three (3) years;
4      b.    A term of supervised release of not less than one (1) year and
5      up to life;
6      c.    A fine of up to $250,000.00;
7      d.    A $100 special penalty assessment.
8      2.    <u>Supervised Release</u>:
9  Defendant understands that if Defendant violates any condition of
10 Defendant's supervised release, the Court may revoke Defendant's term of
11 supervised release, and require Defendant to serve in prison all or part of the term
12 of supervised release authorized by statute for the offense that resulted in such term
13 of supervised release without credit for time previously served on post-release
14 supervision, up to the following terms:
15     a.    Five (5) years in prison if the offense that resulted in the term of
16     supervised release is a class A felony,
17     b.    Three (3) years in prison if the offense that resulted in the term
18     of supervised release is a class B felony, and/or
19     c.    Two (2) years in prison if the offense that resulted in the term
20     of supervised release is a class C or D felony,
21     d.    One (1) year in prison if the offense that resulted in the term of
22     supervised release is a class E felony.
23 Accordingly, Defendant understands that if Defendant commits one or more
24 violations of supervised release, Defendant could serve a total term of
25 incarceration greater than the maximum sentence authorized by statute for
26 Defendant's offense or offenses of conviction.
27 //
28

PLEA AGREEMENT - 2

3. <u>The Court is Not a Party to this Plea Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a. Sentencing is a matter solely within the discretion of the Court;

    b. The Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c. The Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d. The Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e. The Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart or vary upward or downward under certain circumstances; and

    f. The Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>:

If Defendant is not a citizen of the United States, Defendant understands the following:

    a. Pleading guilty in this case may have immigration consequences;

    b. A broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

PLEA AGREEMENT - 3

      c.      Removal from the United States and other immigration consequences are the subject of separate proceedings; and

      d.      No one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

      a.      The right to a jury trial;

      b.      The right to see, hear and question the witnesses;

      c.      The right to remain silent at trial;

      d.      The right to testify at trial; and

      e.      The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

//
//
//

PLEA AGREEMENT - 4

6.  Elements of the Offense:

The parties agree that in order to convict Defendant of Misprision of a Felony, in violation of 18 U.S.C. § 4, the United States would have to prove the following beyond a reasonable doubt:

> *First*, on or about December 26, 2017, in the Eastern District of Washington, a federal felony was committed, to wit: Murder in the First Degree;
>
> *Second*, Defendant had knowledge of the fact that this federal offense was being committed;
>
> *Third*, Defendant failed to notify the authorities as soon as possible; and,
>
> *Fourth*, Defendant did an affirmative act to conceal the crime.

7.  Factual Basis and Statement of Facts:

The parties stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The parties agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

On December 28, 2017, a relative of 23-year-old D.L. reported to the Yakama Nation Police that D.L. had not been seen since the evening of December 25, 2017. Witnesses from D.L.'s residence reported that D.L. left in a vehicle with friends on the evening of December 25, 2017, and did not return. On December 29, 2017, a person driving near Harrah Road and Marion Drain Road on the Yakama Nation Indian Reservation, in Indian Country, reported seeing a body face-down next to the canal on the opposite bank. Police responded to the location

PLEA AGREEMENT - 5

and found the body of D.L.  Police confirmed that D.L. was deceased.  She had blood on her face, no pulse, and was cold to the touch.  Police observed what appeared to be drag marks in the snow at the top of the embankment and two sets of footprints.

An autopsy conducted on January 2, 2018, revealed a compression fracture at the base of D.L.'s skull.  D.L. also had a small laceration to her left eyebrow and three large lacerations on the back of her head.  D.L.'s cause of death was determined to be cerebral trauma due to her skull fracture.

An FBI special agent assisting in the investigation located several witnesses who were with D.L. or who saw her on the evening of December 25-26, 2017.  Witnesses reported that D.L. left her residence in the company of Defendant Waylon Napyer; co-defendant Tahsheena Sam; Calvin Wahsise; and Shelaine Slakish. The group purchased alcohol to share and drove around the Yakama Nation Indian Reservation in Defendant's truck.  During the evening, Calvin Wahsise became separated from the group and was not present during D.L.'s murder.

On February 17, 2018, a witness provided law enforcement with a series of text messages sent on February 16 and 17, 2018, between the witness and Shelaine Slakish, which referenced D.L.'s murder.  Slakish asserted that Defendant knew what happened to D.L., then explained in part that "[D.L.] DIDN'T FALL WE SMASHED HER IN THE HEAD WIT A TOOL THREW HER IN THE CANAL."

On April 3, 2018, the FBI obtained search warrants for the Facebook accounts maintained by Slakish and others suspected of having knowledge of D.L.'s murder.  In a series of messages exchanged between Slakish and Sam on January 6, 2018, Sam complained that Slakish did not tell her that federal investigators were looking for them.  Sam later told Slakish that she was going to

PLEA AGREEMENT - 6

turn herself in and take the blame. Slakish discouraged Sam from doing that and told Sam that they were all going to Canada.

Through the spring, summer, and fall of 2018, the FBI conducted interviews with Defendant, Wahsise, Sam, and others.

Wahsise reported that on December 25, 2017, he was at a family gathering in White Swan. Defendant stopped by and wanted to go drinking with him. Wahsise contacted D.L. to see if she wanted to join them. Before picking her up, Wahsise and Defendant picked up Slakish and Sam. When they picked up D.L. at D.L.'s residence, Sam was driving Defendant's Ford pickup truck. Defendant and Slakish were in the back seat; Wahsise and D.L. were in the front seat. The group drove to the store to buy "match bottles" of Southern Comfort, Crown Royal, and Grey Goose. At 1:00 a.m., they parked outside of White Swan. Wahsise exited the truck and continued drinking. He claimed that Defendant, Slakish, and Sam "ditched" him at that time, saying they were going to drop off D.L. Wahsise said he blacked out. When Wahsise came to, he found himself walking down Fort Road to a relative's residence. When Wahsise learned that D.L. had been killed, he contacted Defendant and demanded to know what Defendant had done to her. Defendant told Wahsise that Sam was the driver and that Slakish disposed of D.L.'s body. He said that when they were buying the alcohol, he saw that D.L. had some money. Defendant wanted the money. After D.L. was killed, Sam became angry at Defendant. She took the money that they had taken from D.L. and threw it at Defendant.

The interview with Defendant occurred on May 18, 2018. Defendant initially denied knowing D.L. After being confronted with Facebook messages that contradicted this statement, Defendant claimed that his phone had been stolen and his account hacked. When confronted with additional messages, he admitted that he was with D.L. on the night she disappeared. Defendant claimed they were driving around in his pickup truck with Slakish, Wahsise, and Sam. He claimed he

PLEA AGREEMENT - 7

was lying down on the backseat while Sam drove. Defendant claimed D.L. was in the front seat with Wahsise, and that he and Slakish were dating, as were Wahsise and D.L. He claimed they went to a bar to get something to eat. Defendant claimed he got into an argument with Slakish and had Sam drop him off at the residence of a third party. He claimed the rest of the group left in his truck. He denied any knowledge of what happened to D.L.

In January of 2019, the FBI conducted an interview of Slakish. Slakish agreed that Wahsise became separated from the group before D.L.'s murder but denied that they had dropped off Defendant, who Slakish said remained present throughout D.L.'s murder. Slakish said that Sam assaulted D.L. in order to take money that D.L. had with her. This occurred outside the vehicle next to the canal near Harrah Road and Marion Drain Road. After assaulting D.L., they left D.L. on the side of the road; however, Sam later became concerned that D.L. would tell her brothers that Sam had assaulted her. At Sam's urging, the group returned to the scene and found D.L., who was trying to hide. Slakish said that Sam assaulted D.L. a second time. While D.L. was on the ground, Sam hit D.L. over the head with a "monkey wrench." They then left the area.

In the summer of 2019, the FBI located a witness who reported that during the summer of 2018, Sam made a series of statements to her in which she described killing a girl with a tool.

On June 13, 2023, the grand jury returned a Superseding Indictment charging Sam with D.L.'s. death. Following her arrest and initial appearance on June 20, 2023, Sam admitted to killing D.L. Sam said she was driving Defendant's truck on the evening of December 25-26, 2017, with Defendant, Slakish, Wahsise, and D.L all present. After Wahsise became separated from the group, money was forcibly taken from D.L., and D.L. was left on the side of the road near Harrah Road and Marion Drain Road on the Yakama Nation Indian Reservation. After driving away, members of the group discussed the need to return to prevent D.L.

PLEA AGREEMENT - 8

1  from reporting the crime. Sam, Defendant, and Slakish returned to the location
2  where they had left D.L. Sam used a flashlight to follow D.L.'s tracks in the snow
3  until she found her. Sam found a monkey wrench located in the pickup truck and
4  approached D.L. Sam then struck D.L. several times in the head with the monkey
5  wrench. D.L. slumped to the ground. Sam drove away with Defendant and
6  Slakish, leaving D.L.'s body where it was discovered a few days later. Sam said
7  that after returning to her residence, Defendant and another individual disposed of
8  the monkey wrench that Sam used to kill D.L.
9        Defendant admits that he witnessed D.L.'s murder, and that he failed to
10 notify the authorities as soon as possible following the murder. Furthermore,
11 Defendant admits he took affirmative steps to conceal the murder from law
12 enforcement in that he disposed of the weapon that was used to murder D.L.
13      8.    The United States' Agreements:
14         a.    *Dismissals*:
15      At the time of sentencing, the United States agrees to move to dismiss the
16 Indictment filed on August 8, 2023, in Case No. 1:23-CR-2045-MKD, charging
17 Defendant with Assault with a Dangerous Weapon in Indian County, in violation
18 of 18 U.S.C. §§ 113(a)(3), 1153(a) (Count 1); Assault Resulting in Serious Bodily
19 Injury in Indian Country, in violation of 18 U.S.C. §§ 113(a)(6), (1153(a) (Count
20 2); Discharge of a Firearm During a Crime of Violence, in violation of 18 U.S.C.
21 § 924(c)(1)(A)(iii) (Count 3).
22         b.    *Additional Charges*:
23      The United States Attorney's Office for the Eastern District of Washington
24 agrees not to bring additional charges against Defendant based on information in
25 its possession at the time of this Plea Agreement that arise from conduct that is
26 either charged in the Indictment or identified in discovery produced in this case,
27 unless Defendant breaches this Plea Agreement before sentencing.
28 //

PLEA AGREEMENT - 9

9. <u>United States Sentencing Guidelines Calculations</u>:

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

    a.   *Base Offense Level and Application of Relevant Conduct*:

The parties agree and stipulate that Defendant's base offense level for Misprision of a Felony (Murder in the First Degree) is 19. *See*, U.S.S.G. §§2X4.1(a), 2A1.1(a).

    b.   *Special Offense Characteristics*:

The United States and Defendant agree that no Special Offense Characteristics apply that would reduce Defendant's Offense Level below 19.

    c.   *Role Adjustments*:

The United States and Defendant agree not to seek any role adjustment. *See* U.S.S.G. §§3B1.1, 3B1.2.

    d.   *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

        i.   Accepts this Plea Agreement;

        ii.   Enters a guilty plea at the next pretrial hearing;

        iii.   Demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

        iv.   Provides complete and accurate information during the sentencing process; and

        v.   Does not commit any obstructive conduct.

//

PLEA AGREEMENT - 10

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

      e.    *Criminal History*:

The parties have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

    10.    <u>Incarceration</u>:

The United States and Defendant agree to recommend a sentence of imprisonment of 36 months.

    11.    <u>Supervised Release</u>:

The United States and Defendant each agree to recommend one (1) year of supervised release. Defendant agrees that the Court's decision regarding the term and conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is dissatisfied with the conditions of supervised release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release:

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

PLEA AGREEMENT - 11

      b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

12. <u>Criminal Fine</u>:

The parties have no agreement on whether a fine should be imposed.

13. <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

14. <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The parties agree the United States may, at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

16. <u>Waiver of Appeal Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives the right to appeal his convictions and the sentence imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

PLEA AGREEMENT - 12

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

17.  **Withdrawal or Vacatur of Defendant's Plea:**

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.  This Plea Agreement shall become null and void;

    b.  The United States may prosecute Defendant on all available charges;

    c.  The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.  The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

PLEA AGREEMENT - 13

18.  **Integration Clause:**

The parties acknowledge that this document constitutes the entire Plea Agreement between the parties, and no other promises, agreements, or conditions exist between the parties concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The parties agree that this Agreement cannot be modified except in a writing that is signed by the parties.

**Approvals and Signatures**

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____       7/16/24
Todd M. Swensen                                              Date
Assistant United States Attorney

_____       7/16/24
Timothy J. Ohms                                              Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those

PLEA AGREEMENT - 14

rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

X_____     Date 7/10/24
WAYLON JAKE NAPYER
Defendant


I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____     Date 7/10/24
Nicholas Marchi
Attorney for Defendant

PLEA AGREEMENT - 15